UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CONNIE K. DREES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. _____ |
| | ) |
| PHILADELPHIA AMERICAN LIFE | ) |
| INSURANCE COMPANY | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Connie K. Drees ("Plaintiff") brings the following action against Defendant Philadelphia American Life Insurance Company ("Philadelphia American" or "Defendant") and states as follows:

## NATURE OF ACTION

1. This is an action seeking damages for violations of Tex. Ins. Code Ann. §541.051 et seq., Subchapter B of the Texas Insurance Code, because Philadelphia American in its "Hospital Indemnity Insurance" policy has deceived Plaintiff into reasonably believing that Philadelphia American would pay for medically necessary supplies where a policyholder has surgery performed in a Hospital when, in reality, the payment system referenced in the policy does not provide any values for supplies, meaning that Philadelphia American will never specifically pay for the cost of supplies charged to a patient.

2. Plaintiff Connie Drees purchased a Hospital Indemnity Insurance policy from Philadelphia American. Following a fall from a horse she was rushed to a hospital where surgery was performed to treat eight broken ribs, a collapsed lung and other injuries suffered in the fall. Extensive medical supplies, including 52 surgical screws, 8 plates and numerous sutures were used in the surgery. The hospital billed Connie Drees $165,826.95 for room and board, services, and

supplies during her stay. Philadelphia American acknowledged coverage under her policy but paid only $32,185.00 and refused to pay the balance of $133,641.95 – over 80% of her bill – denying that she was entitled to compensation for any charges for the supplies billed by the hospital, including the screws, plates and sutures necessary to put her back together. Thereafter the hospital commenced collection efforts against Connie Drees.

3. §541.061 of the Texas Insurance Code provides in part:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:

(1) making an untrue statement of material fact;

(2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact…

4. Philadelphia American violated §541.061(1) of the Texas Insurance Code because the policy states that it covers medically necessary supplies. But, in reality, Philadelphia American provides no payment for supplies used or consumed in surgery. Therefore, the express policy language constitutes an untrue statement of material fact.

5. Philadelphia American violated §541.061(2) of the Texas Insurance Code by failing to clearly state that the policy would never provide any benefit for medically necessary supplies used or consumed in surgery.

6. Philadelphia American violated §541.061(3) of the Texas Insurance Code by expressly stating in the policy that benefits included medically necessary supplies provided by a hospital and misleading policyholders by referring them to a payment system which is not readily available to, or comprehensible by, policyholders and provides no values for such supplies.

7. Such misrepresentations have caused material harm to Plaintiff who dutifully paid premiums expecting Philadelphia American to pay for the cost of medically necessary supplies used or consumed in surgery for which she was charged by the hospital.

8. Philadelphia American's actions were an efficient, exciting, or contributing cause, which in the natural sequence of events produced injuries and damages suffered by Plaintiff; and were both a cause-in-fact and a substantial factor in causing the injuries and damages.

9. Plaintiff is entitled to recover the cost of the medically necessary supplies used or consumed in surgery which have not been paid by Philadelphia American.

10. Philadelphia American knowingly made such representations with actual awareness of the falsity, unfairness, or deceptiveness of its actions and practices upon which these claims are based.

11. Plaintiff seeks to recover compensatory damages, treble damages, reasonable attorney fees and costs, as well as declaratory relief.

## PARTIES

12. Plaintiff Connie K. Drees resides in Wellsville, Kansas, and is a citizen of the State of Kansas.

13. Defendant Philadelphia American is an insurance company organized and existing under the laws of the State of Texas, with its principal place of business in Houston, Texas.

## JURISDICTION AND VENUE

14. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a), because this is a civil action where the amount in controversy exceeds $75,000, exclusive of interest and costs and is between citizens of different states.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that Defendant resides in this judicial district and division and a substantial portion of the events giving rise to Plaintiff's causes of action occurred in this judicial district and division.

## FACTUAL BACKGROUND

**Plaintiff's Policy**

16.     Plaintiff purchased from Defendant a "Hospital Indemnity Insurance" policy bearing the policy number 6609503601, with an effective date of November 21, 2017, and an initial monthly premium of $740.75 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit A and incorporated by reference as though fully set forth herein.

17.     At the time of the events described herein Plaintiff had paid all premiums and the Policy was in full force and effect.

18.     Defendant is the effective and liable insurer of the Policy.

19.     The entire contract between Plaintiff and Defendant consists of the Policy, the application, and any attachments to the Policy.

20.     The terms of the Policy are not subject to individual negotiation.

21.     Only an executive officer of Philadelphia American has authority to change a provision of the Policy, and such change is only valid if made in writing and such approval has been forwarded to the Policy owner for attachment to the Policy.

22.     Insurance agents do not have "authority to change the terms" nor "waive any of the provisions" of the Policy.

23.     Defendant has issued and administered, and currently administers, all aspects of the Policy, including collecting premiums, and determining, assessing, and providing policy benefits on coverage claims.

**Plaintiff's Injury and Treatment**

24.     On September 9, 2018, Plaintiff was thrown from a horse and struck the ground suffering severe injuries.

25.     Plaintiff was rushed to Saint Luke's Hospital South, part of the Saint Health Luke's Health System ("Hospital") and into the Emergency Room where she was promptly examined. CT scans and X-rays were taken to determine the scope and severity of her injuries.

26.     Examination revealed that Plaintiff had suffered:

   a.   Posterior rib fractures from the right third through seventh ribs;

   b.   Lateral rib fractures from the second through eighth ribs with the third, fourth and fifth ribs piercing the chest cavity;

   c.   Pneumothorax (i.e. collapsed lung occurring when there is air outside the lung between the lung and chest cavity);

   d.   Hemothorax (blood between the lung and chest cavity);

   e.   Subcutaneous emphysema (penetration of air into tissues under the skin); and

   f.   Pneumonitis (inflammation of lung tissue).

27.     Following evaluation in the Emergency Room, she was taken by ambulance to the main campus of Saint Luke's Hospital for treatment.

28.     Plaintiff underwent surgery on September 11, 2018 to treat her injuries.

29.     Surgeons cut into the front of her chest to expose her fractured anterior ribs and placed four plates secured by screws drilled into the four anterior fractured ribs.

30.     Surgeons then made on incision in her back to expose her fractured posterior ribs and placed four additional plates secured by screws drilled into the four posterior fractured ribs.

31.     In total, surgeons placed 8 plates secured by 52 screws.

32. Surgeons placed a chest tube to drain fluids and then used sutures to close up the Plaintiff.

33. Plaintiff remained at Saint Luke's Hospital for physician-recommended medical treatment and pain control until she was discharged on September 15, 2018.

**Terms of Plaintiff's Policy**

34. Plaintiff is a "Covered Person" under the Policy. Ex. A at p. 3.

35. The Policy provides "Covered Benefits" for Covered Persons in the event of "Medically Necessary" treatment, subject to certain exclusions:

> **Covered Benefits**
> Those services and/or **supplies** if included in this policy, that:
> (a) are for Medically Necessary treatment and recommended by a Physician;
> (b) are received while a Covered Person is insured under the policy, subject to any Extension of Benefits; and
> (c) are not excluded under Section 4 of the policy.

Ex. A at p. 5. (emphasis added).

36. The Policy defines "Medically Necessary" services or supplies:

> **Medically Necessary**
> Those services or **supplies** provided by a Hospital or Physician that are required to identify or treat an Injury or Sickness and which, as determined by Us, are:
> (a) consistent with the symptom or diagnosis and treatment of a Covered Person's condition, Sickness or Injury;
> (b) appropriate with regard to standards of good medical practice;
> (c) not solely for the convenience of a Covered Person, a Physician or other provider; and
> (d) the most appropriate **supply** or level of service that can be safely provided to the Covered Person.

Ex. A at p. 6. (emphasis added)

37. The Policy defines a "Hospital" as:

> **Hospital**
> Hospital is a legally constituted institution (or an institution which operates pursuant to law) having organized facilities for the care and treatment of sick and injured persons on a resident or inpatient basis, including facilities for diagnosis and surgery under the supervision of a staff of 1 or more licensed physicians and

which provides 24-hour nursing service by registered nurses on duty or call. It does not mean convalescent, nursing, rest or extended care facilities or facilities operated exclusively for treatment of the aged, drug addict or alcoholic, even though the facilities are operated as a separate institution by a hospital.

Ex. A at p. 5.

38. The Policy defines "Physician" as:

**Physician**
A practitioner of the healing arts who:
 (a) is practicing within the scope of his or her license in the state where so licensed: and
 (b) is not a member of a Covered Person's Immediate Family; and
 (c) provides treatment or service covered under the Policy

39. The Policy's Schedule of Benefits identifies two categories of Hospital Indemnity Benefits: "Facility Fees" and "Professional Services". Ex. A at p. 3.

40. The Policy's Schedule of Benefits identifies Hospital Indemnity Benefits for "Facility Fees" as follows:

| HOSPITAL INDEMNITY BENEFITS | |
|---|---|
| **Facility Fees** | |
| Daily Indemnity Benefit during Confinement in a Hospital (including Observation Unit stay for 24 hours or more) as a result of a covered:<br>Sickness<br>Injury<br>* First Day Hospital Confinement Benefit Percentage applies | $4,500<br>$6,000 |
| Daily Indemnity Benefit during Confinement in a Hospital for Mental Illness, Alcohol and/or Substance Abuse Dependency | $600 |
| Daily Indemnity Benefit during Confinement in a Hospital's Intensive Care Unit (ICU) up to 20 days per Calendar Year as a result of a covered:<br>Sickness<br>Injury<br>* First Day Hospital Confinement Benefit Percentage applies | $6,750<br>$6,750 |
| Daily Indemnity Benefit during Confinement in a Rehabilitation Facility or a Skilled Nursing Facility (does not include Mental Illness, Alcohol and/or Substance Abuse Dependency) | $2,250 |
| Daily Indemnity Benefit for Outpatient Hospital or ambulatory surgical center services when surgery is performed:<br>Surgery performed under general anesthesia<br>Surgery performed not requiring general anesthesia | $4,500<br>$2,250 |
| Daily Indemnity Benefit for Outpatient Radiation Therapy or Chemotherapy | $2,250 |

Ex. A at p. 3.

7

41. The Policy states that the Daily Indemnity Benefit During Confinement in a Hospital will be paid as a Covered Benefit as follows:

> We will pay the Daily Indemnity Benefit shown in the Schedule of Benefits for each day a Covered Person is Confined in a Hospital as a result of a covered Injury or Sickness. Benefits are payable for the period such person is so confined and receiving medical care and regular attendance of a Physician. The benefit is limited and subject to the First Day Hospital Confinement Benefit Percentage as shown on the Schedule of Benefits page. First day means the first 24 hour period of confinement.

42. According to the Policy's Schedule of Benefits, the Daily Indemnity Benefit During Confinement in a Hospital is $6,000 per day for "Injury," and is discounted to 20% on the first day of confinement at a hospital pursuant to the "First Day Hospital Confinement Benefit Percentage." Ex. A at p. 3.

43. Plaintiff was confined to the Hospital for six (6) days for treatment for an injury.

44. Defendant paid the Daily Indemnity Benefit During Confinement in a Hospital in the amount of $31,200 ((1 day x $6000 x 20%) + (5 days x $6000)) thereby acknowledging that Plaintiff was a Covered Person who received Medically Necessary treatment at a Hospital and was confined to the Hospital thereby entitling Plaintiff to Covered Benefits under the Policy.

45. In addition to Facility Fees, the Policy's Schedule of Benefits provides for "Professional Services" as follows:

| Professional Services | |
|---|---|
| Daily Inpatient Physicians Care Indemnity Benefit -- Non-Surgical | $150 |
| Daily Surgery Indemnity Benefit for covered services when performed in a Hospital or in an ambulatory surgical center | 3X of current RBRVS per procedure for your provider location |
| Daily Inpatient Pathologist/Radiologist Benefits for covered services | 3X of current RBRVS per procedure for your provider location |
| Daily Assistant Surgeon Surgical Services Indemnity Benefit for covered services | 20% of surgical benefits payable |
| Daily Anesthesia Indemnity Benefit for covered services | 25% of surgical benefits payable |

8

Ex. A at p. 3.

46. Among the Professional Services, the Policy provides it will pay a "Daily Surgery Indemnity Benefit":

> We will pay the multiple of RBRVS shown in the Schedule of Benefits for **covered** surgical **benefits** per procedure as a result of Injury or Sickness when performed in a Hospital or in an ambulatory surgical center."

Ex A at p. 9. (emphasis added)

47. In the Schedules of Benefits chart, the Policy states: "Daily Surgery Indemnity Benefit for covered services when performed in a Hospital or in an ambulatory surgical center" is "3X of current RBRVS per procedure for your provider location." Ex A at p. 3.

48. The Policy provides the following definition for RBRVS:

> The methodology used by the federal government to determine benefits payable under Medicare. Medicare assigns a "Relative Value Unit" or RVU to thousands of procedure codes used to bill physician and other services. The total RVU is the sum of three component RVUs including the Work RVU, the Practice Expense RVU and the Malpractice RVU. The Work RVU takes into account factors such as the amount of time required to perform the service and the degree of skill required to perform it. The Practice Expense RVU takes into account the location of the service, e.g., office setting, outpatient setting, etc. The Malpractice RVU takes into account the malpractice cost associated with a particular practice. We will base benefits payable on RBRVS.

49. "RBRVS" is not otherwise defined in the Policy.

**Hospital Billings and Philadelphia American's Denial of Benefits**

50. Saint Luke's Health System billed Plaintiff $165,826.95 for the medical services and supplies used to treat her injuries. A true and accurate copy of the billings from Saint Luke's Health System are attached as Exhibit B and incorporated by reference as though fully set forth herein.

51. Philadelphia American paid $32,185.00 of the $165,826.95 billed leaving Plaintiff responsible for the balance of $133,641.95. Ex B.

9

52. Of the $19,849.40 charged for the Emergency Room services, including the CT and X-rays taken at Saint Luke's Hospital South on September 9, 2018, Philadelphia American paid only $985.00 consisting of:

```
$60    laboratory testing
$120   diagnostic testing
$525   diagnostic testing
$250   emergency room
$30    injection
$985   total
```

53. Of the $145,977.55 charged for the surgery and post-operative care at Saint Luke's Hospital, Philadelphia American paid only $31,200 consisting of:

```
$1200    Facility Fee for September 9, 2018
$6,000   Facility Fee for September 10, 2018
$6,000   Facility Fee for September 11, 2018
$6,000   Facility Fee for September 12, 2018
$6,000   Facility Fee for September 13, 2018
$6,000   Facility Fee for September 14, 2018
$31,200  Total
```

54. For the supplies used and consumed in Plaintiff's September 11, 2018 emergency surgery, Saint Luke's Health System charged Plaintiff significant sums for consumables such as surgical materials, fluids and medications, and for durable medical equipment such as screws and plates that were permanently implanted in Plaintiff.

55. The charge alone for a portion of the durable medical equipment which surgeons permanently implanted in Plaintiff was $68,439 consisting of the following:

| Date | | | Description | Qty | Amount |
|---|---|---|---|---|---|
| 09/11/18 | 0278 | 27800112 | IMPLANT SCREW TEMP FIXATION 76-0007 | 2 | 1,566.00 |
| 09/11/18 | 0278 | 27800112 | IMPLANT SCREW 2.4X8MM SD 76-2408 | 42 | 21,042.00 |
| 09/11/18 | 0278 | 27800112 | IMPLANT SCREW 2.4X8MM SD 76-2408 | 1 | 501.00 |
| 09/11/18 | 0278 | 27800112 | IMPLANT SCREW 2.4X10MM SD 76-2410 | 5 | 2,505.00 |
| 09/11/18 | 0278 | 27800112 | IMPLANT SCREW 2.7X8MM RESCUE 76-2708 | 3 | 1,503.00 |
| 09/11/18 | 0278 | 27800112 | IMPLANT SCREW 2.7X10MM RESCUE 76-2710 | 2 | 1,002.00 |
| 09/11/18 | 0278 | 27800112 | IMPLANT PLATE 12 HOLE TEMPLATE 76-9102 | 1 | 237.00 |
| 09/11/18 | 0278 | 27800112 | IMPLANT PLATE 24 HOLE PRE CONTOURED 76-2604 | 1 | 8,106.00 |
| 09/11/18 | 0278 | 27800112 | IMPLANT PLATE 12 HOLE PRE CONTOURED 76-2602 | 6 | 25,866.00 |
| 09/11/18 | 0278 | 27800112 | IMPLANT PLATE 16 HOLE PRE CONTOURED 76-2603 | 1 | 6,111.00 |

The Itemization of Saint Luke's Heath System hospital charges are attached hereto as Exhibit C and are incorporated by reference as though fully set forth herein.

56. The Policy defines two types of Hospital Benefits: "Facility Fees" and "Professional Services".

57. In defining Facility Fee benefits, the Policy provides a "Daily Indemnity Benefit During Confinement in a Hospital" which makes no reference to surgery; it refers only to payment for each day of confinement in a hospital due to injury or sickness and provides a daily rate. Ex. A at p. 9.

58. In defining Professional Services, the Policy provides a "Daily Surgery Indemnity Benefit" and states: "We will pay the multiple of RBRVS shown in the Schedule of Benefits for covered surgical benefits per procedure as a result of Injury or Sickness when performed in a Hospital or in an ambulatory surgical center."

59. The Schedule of Benefits provides for "3X of current RBRVS values."

60. The Policy states that Covered Benefits include supplies.

61. The express language of the Policy would lead a reasonably prudent Policyholder to believe that supplies for surgery would be covered.

62. RBRVS is a physician payment system used by the federal government to determine payment under Medicare and Medicaid, but it provides no value for supplies; it relates only to physician services.

63. Three times nothing is nothing. Therefore, Philadelphia American paid nothing for the supplies used and consumed in the September 11, 2018 surgery.

64. Philadelphia American also paid nothing for the supplies associated with Plaintiff's post-surgery care.

11

65. Philadelphia American knowingly made such representations in the Policy with actual awareness of the falsity, unfairness, or deceptiveness of its actions and practices.

66. Plaintiff sought clarifications from Philadelphia American regarding the hospital billings and Philadelphia American's basis for declining payment .

67. Unable to obtain satisfactory answers to her questions, Plaintiff made a formal appeal of Philadelphia American's Explanation of Benefits in a letter dated August 23, 2019, a copy of which is attached as Exhibit D and is incorporated by reference as though fully set forth herein.

68. Philadelphia American denied Plaintiff's appeal by a letter dated September 26, 2019.  A copy of the September 26, 2019 denial of Plaintiff's appeal is attached as Exhibit E and is incorporated by reference as though fully set forth herein.

69. Philadelphia American, in its Explanation of Benefits, stated that it had paid only a facility fee of $31,200 for the $145,977.55 charged by Saint Luke's Health System for the facilities, services and supplies furnished at its main campus.  A copy of the Explanation of Benefits is included in Exhibit E.

70. Philadelphia American has also provided an Explanation of Benefits, attached as Exhibit F concerning the $19,849.40 charged for the Emergency Room services at Saint Luke's Hospital South on September 9, 2018 where Philadelphia American paid only $985.00 of the Hospital's bills.

71. Plaintiff has exhausted all administrative appeals and procedures.

72. Saint Luke's Health System initiated collection efforts against Plaintiff to recover the charges for the supplies Philadelphia American declined to pay.

73. In order to mitigate the damage to her credit rating and the expenses of a lawsuit by Saint Luke's Health System, Plaintiff is currently making scheduled payments to Saint Luke's Health System.

## **COUNT I: VIOLATION OF TEX. INS. CODE ANN. § 541.061(A)(1)**
## **MAKING AN UNTRUE STATEMENT OF MATERIAL FACT**

74. The preceding paragraphs are incorporated by reference as if fully alleged herein.

75. Plaintiff purchased a Hospital Indemnity Insurance Policy from Philadelphia American.

76. Philadelphia American violated §541.061(1) of the Texas Insurance Code because the Policy states that it covers medically necessary supplies.

77. Philadelphia American, however, provides no payment for supplies used or consumed in surgery.

78. Therefore, the express Policy language constitutes an untrue statement of material fact.

79. The Plaintiff has been damaged because Philadelphia American has denied coverage and refused to pay for charges for supplies used or consumed in a medically necessary surgery performed in a Hospital at the recommendation of a Physician to treat injuries suffered by a Covered Person during the Policy period.

80. Philadelphia American's actions were an efficient, exciting, or contributing cause, which in the natural sequence of events produced injuries and damages suffered by Plaintiff; and, were both a cause-in-fact and a substantial factor in causing the injuries and damages.

81. Plaintiff is entitled to recover the cost of the medically necessary supplies used or consumed in surgery which have not been paid by Philadelphia American.

82. Plaintiff is entitled to have such damages trebled and to recover her reasonable attorney fees and costs.

## COUNT II: VIOLATION OF TEX. INS. CODE ANN. § 541.061(A)(2)

### FAILING TO STATE A MATERIAL FACT NECESSARY TO MAKE OTHER STATEMENTS MADE NOT MISLEADING

83. The preceding paragraphs are incorporated by reference as if fully alleged herein.

84. Plaintiff purchased a Hospital Indemnity Insurance Policy from Philadelphia American.

85. Philadelphia American provides no payment for supplies used or consumed in surgery.

86. Philadelphia American violated §541.061(2) of the Texas Insurance Code because it failed to clearly state that the Policy would not provide any benefit for medically necessary supplies used or consumed in surgery.

87. The Plaintiff has been damaged because Philadelphia American has denied coverage and refused to pay for charges for supplies used or consumed in a medically necessary surgery performed in a Hospital at the recommendation of a Physician to treat injuries suffered by a Covered Person during the Policy period.

88. Philadelphia American's actions were an efficient, exciting, or contributing cause, which in the natural sequence of events produced injuries and damages suffered by Plaintiff; and were both a cause-in-fact and a substantial factor in causing the injuries and damages.

89. Plaintiff is entitled to recover the cost of the medically necessary supplies used or consumed in surgery which have not been paid by Philadelphia American.

90. Plaintiff is entitled to have such damages trebled and to recover her reasonable attorney fees and costs.

## COUNT III: VIOLATION OF TEX. INS. CODE ANN. § 541.061(A)(3)

### MAKING A STATEMENT IN A MANNER THAT WOULD MISLEAD A REASONABLY PRUDENT PERSON TO A FALSE CONCLUSION OF A MATERIAL FACT

91. The preceding paragraphs are incorporated by reference as if fully alleged herein.

92. Plaintiff purchased a Hospital Indemnity Policy from Philadelphia American.

93. Philadelphia American provides no payment for supplies used or consumed in surgery.

94. Philadelphia American violated §541.061(3) of the Texas Insurance Code because it expressly stated in the Policy that benefits included medically necessary supplies provided by a Hospital and misled Policyholders by referring them to a payment system which is not readily available to or comprehensible by Policyholders and provides no values for such supplies.

95. The Plaintiff has been damaged because Philadelphia American has denied coverage and refused to pay for charges for supplies used or consumed in a medically necessary surgery performed in a Hospital at the recommendation of a Physician to treat injuries suffered by a Covered Person during the Policy period.

96. Philadelphia American's actions were an efficient, exciting, or contributing cause, which in the natural sequence of events produced injuries and damages suffered by Plaintiff; and were both a cause-in-fact and a substantial factor in causing the injuries and damages.

97. Plaintiff is entitled to recover the cost of the medically necessary supplies used or consumed in surgery which have not been paid by Philadelphia American.

98. Plaintiff is entitled to have such damages trebled and to recover her reasonable attorney fees and costs.

## COUNT IV: DECLARATORY RELIEF

99. The preceding paragraphs are incorporated by reference as if fully alleged herein.

100. An actual controversy has arisen and now exists between Plaintiff on the one hand, and Philadelphia American on the other, concerning the respective rights and duties of the parties under the Policy and under Tex. Ins. Code Ann. § 541.061(a), subsections (1), (2) and (3).

101. Plaintiff contends that Philadelphia American has violated Tex. Ins. Code Ann. § 541.061(a), subsections (1), (2) and (3) by engaging in an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by making statements that would lead a reasonably prudent policyholder to believe that Philadelphia American would pay charges for supplies used or consumed in a medically necessary surgery performed in a Hospital at the recommendation of a Physician to treat injuries suffered by a Covered Person during the Policy period.

102. Plaintiff seeks a declaration of the parties' respective rights and duties under the Policy and Class Policies and requests the Court to declare the aforementioned conduct of Defendant as unlawful and in violation of Tex. Ins. Code Ann. § 541.061(a) subsections (1), (2) and/or (3) so that future controversies may be avoided.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests relief and judgment against Defendant as follows:

(a) For a judgment against Defendant for violations of Tex. Ins. Code Ann. § 541.061(a) subsections (1), (2) and/or (3);

(b) For damages in excess of $75,000 exclusive of interest and costs;

(c) For treble damages;

(d) For a declaration that Defendant's conduct as alleged herein is unlawful and in violation of Tex. Ins. Code Ann. § 541.061(a) subsections (1), (2) and/or (3);

(e) For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(f) For Plaintiff's attorney fees and costs incurred; and

(g) For such other relief in law or equity as the Court deems just and proper.

**ABRAHAM, WATKINS, NICHOLS, SORRELS, AGOSTO, AZIZ & STOGNER**

*/s/ Randall O. Sorrels*

———————————————
Randall O. Sorrels
Texas Bar No. 10000000
Fed ID 11115
800 Commerce
Houston, TX 77002
713-222-7211 (telephone)
713-225-0827 (facsimile)
rsorrels@awtxlaw.com

Stephen R. Miller, #33344 (*Pending Pro Hac Admission*)
Mark C. M. Kettlewell, #69169 (*Pending Pro Hac Admission*)
MILLER SCHIRGER, LLC
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
816-561-6500 (telephone)
816-561-6501 (facsimile)
smiller@millerschirger.com
mkettlewell@millerschirger.com

**ATTORNEYS FOR PLAINTIFF**