United States District Court
Southern District of Texas
**ENTERED**
January 03, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| CONNIC K. DREES, §<br>§<br>Plaintiff. §<br>§<br>V. §<br>§<br>PHILADELPHIA AMERICAN LIFE §<br>INSURANCE COMPANY, §<br>§<br>Defendant. § | CIVIL ACTION NO. 4:20-cv-03607 |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a Motion for Summary Judgment filed by Defendant Philadelphia American Life Insurance Company ("PALIC") (*see* Dkt. 67), a Motion for Class Certification filed by Plaintiff Connie K. Drees ("Drees") (*see* Dkt. 88), and PALIC's Motion to Exclude the Expert Testimony of Mark Billingsley (*see* Dkt. 92). All motions are fully briefed. Having reviewed the briefing, the record, and the applicable law, I recommend that PALIC's Motion for Summary Judgment be **GRANTED**, and that Drees's Motion for Class Certification and PALIC's Motion to Exclude be **DENIED** as moot.

### BACKGROUND

In 2017, Drees, a Kansas resident, began searching for an alternative to major medical insurance coverage. She conducted online research and met with an independent insurance coverage representative to help her find the right policy. In November 2017, Drees purchased a Hospital Indemnity Insurance policy ("the Policy") from PALIC, a Texas corporation.

The Policy provides Drees hospital indemnity benefits in exchange for monthly payments. The Policy lists maximum coverage amounts for "Hospital Indemnity Benefits" in the form of "Facility Fees" and "Professional Services." Dkt. 67-1 at 4–5. The "Professional Services" benefit includes a "Daily Surgery Indemnity Benefit for covered services" that is "3X of current RBRVS per

procedure for your provider location." *Id.* at 4. The Policy defines RBRVS as follows:

> **Resource Based Relative Value System, referred to as RBRVS.**
> The methodology used by the federal government to determine benefits payable under Medicare. Medicare assigns a "Relative Value Unit" or RVU to thousands of procedure codes used to bill physician and other services. The total RVU is the sum of three component RVUs including the Work RVU, the Practice Expense RVU and the Malpractice RVU. The Work RVU takes into account factors such as the amount of time required to perform the service and the degree of skill required to perform it. The Practice Expense RVU takes into account the location of the service, e.g., office setting, outpatient setting, etc. The Malpractice RVU takes into account the malpractice cost associated with a particular practice. We will base benefits payable on RBRVS.

*Id.* at 8. Nothing in the Policy indicates that the Policy covers surgical supplies as part of the Daily Surgery Indemnity Benefit. The RBRVS pertains solely to reimbursement of physician services.

In September 2018, Drees fell off a horse on her property in Kansas. She was rushed to the emergency room in Overland Park, Kansas, before being transferred to a hospital in Kansas City, Missouri. Her injuries were severe, requiring surgery to treat eight broken ribs and a collapsed lung. In total, her physicians used 52 surgical screws, eight plates, and numerous sutures to treat her injuries. The hospital billed Drees $145,977.55 for room and board, services, and supplies. The total cost of the surgical screws and plates alone was $68,439.00. Pursuant to the Policy, PALIC paid the hospital a Facility Fee of $31,200.00 for the six days Drees spent in the hospital,[1] and a Daily Surgery Indemnity Benefit of $1,848.39, which is three times the RBRVS value paid by Medicare. The parties agree that the Policy's language is unambiguous, and that PALIC paid Drees what it owed her under the Policy. Once Drees exhausted her benefits under the Policy, she was still left with a six-figure balance.

Drees filed this lawsuit against PALIC under Chapter 541 of the Texas Insurance Code as a purported class action on behalf of all others similarly situated, alleging that PALIC made various misrepresentations regarding the Policy. Importantly, Drees does not assert a breach of contract claim. Drees sums up the basis for her misrepresentation claim as follows:

---

[1] The Policy provided a maximum per-day Facility Fee of $6,000. This payment is not in dispute.

> [PALIC] sold "Hospital Indemnity Insurance" policies to Plaintiff, and similarly situated policyholders ("Policyholders") which promised to pay Surgical Benefits based on current RBRVS values, using deceptive language which would lead a reasonable person to believe that [PALIC] would pay for medically necessary supplies when, in reality, the payment system referenced in the policy does not provide any values for supplies, meaning that [PALIC] will never specifically pay for the cost of medically necessary supplies used or consumed in a surgery provided by a hospital or physician to treat an injury suffered by a Covered Person during the Policy Period charged to a Policyholder.

Dkt. 42 at 1–2. At issue is whether PALIC misled Drees by not disclosing that RBRVS—the methodology used for determining payment of the Policy's surgical benefits—provides a value only for physician services, not surgical supplies[2]; and whether PALIC similarly misled Drees by including the word "supplies" or "supply" three times in the Policy's Definitions section and twice in the Policy's Exclusions and Limitations section of the Policy. Below are the three times the words "supplies" and "supply" appear in the Definitions section of the Policy:

**Covered Benefits**
Those services and/or supplies if included in this policy, that:
  (a) are for Medically Necessary treatment and recommended by a Physician;
  (b) are received while a Covered Person is insured under the policy, subject to any Extension of Benefits; and
  (c) are not excluded under Section 4 of the policy.

**Medically Necessary**
The services or supplies provided by a Hospital or Physician that are required to identify or treat an Injury or Sickness and which, as determined by Us, are:
  (a) consistent with the symptom or diagnosis and treatment of a Covered Person's condition, Sickness or Injury;
  (b) appropriate with regard to standards of good medical practice;
  (c) not solely for the convenience of a Covered Person, a Physician or other provider; and
  (d) the most appropriate supply or level of service that can be safely provided to the Covered Person.

Dkt. 67-1 at 6–7 (highlighting added). Additionally, Section 4, the Exclusions and Limitations section, provides, in relevant part, that "no benefits will be payable as the result of: (a) any service, *supplies* or treatment that is not a specified benefit described in Section 3 [the Benefit Provisions]" or "(w) any service, *supplies* or treatment that is not Medically Necessary." *Id.* at 12 (emphasis added).

---

[2] At a hearing on PALIC's Motion for Summary Judgment, counsel for Drees clarified that her claims pertain to supplies used in surgery, and not medical supplies generally.

Drees advances three arguments, corresponding to the first three subsections of § 541.061, for why PALIC's Policy is "an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy." TEX. INS. CODE ANN. § 541.061. First, Drees argues "the express Policy language constitutes an untrue statement of material fact," in violation of § 541.061(1), "because the Policy states that it covers medically necessary supplies used or consumed in a surgery provided by a hospital or physician to treat an injury suffered by a Covered Person during the Policy Period; but, in reality, [PALIC] provides no such payment." Dkt. 42 at 3. Next, Drees argues that PALIC violated § 541.061(2) "by failing to clearly state that the Policy would never provide any benefit for medically necessary supplies used or consumed in a surgery provided by a hospital or physician to treat an injury suffered by a Covered Person during the Policy Period." *Id.* Finally, Drees argues that PALIC misled consumers, in violation of § 541.061(3), in two ways, by: (1) "expressly stating in the Policy that benefits included medically necessary supplies used or consumed in a surgery provided by a hospital or physician to treat an injury suffered by a Covered Person during the Policy Period," and (2) "misleading Policyholders by referring them to a payment system which is not readily available to, or comprehensible by, Policyholders and provides no values for such supplies." *Id.* at 4.

PALIC has moved for summary judgment. First, PALIC argues that either the law of Missouri or Kansas should apply, and that neither state recognizes the claims Drees advances in this litigation. Alternatively, PALIC argues that Drees's claims fail as a matter of Texas law. PALIC also argues that Drees's claims are barred by the two-year statute of limitations, and that Drees's request for declaratory judgment is inseparable from her statutory claims and should also be dismissed as a matter of law.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

4

a matter of law." FED. R. CIV. P. 56(a). A fact issue is material only "if its resolution could affect the outcome of the action." *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once satisfied, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial. *See id.* at 324. To do so, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

## ANALYSIS

### A. Texas Law Applies to This Dispute

A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Accordingly, I look to Texas rules, which "track, at least in part, the Restatement (Second) of Conflict of Laws." *Am. States Ins. Co. v Synod of the Russian Orthodox Church Outside of Russia*, 335 F.3d 493, 496 n.3 (5th Cir. 2003). "Except when a contract with a valid choice of law clause applies, Texas courts apply the substantive law of the state with the most significant relationship to the particular dispute at issue." *Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*, 175 S.W.3d 284, 291 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984); RESTATEMENT (SECOND) OF CONFLICT OF LAWS ("Restatement") §§ 6, 145, 188 (1971)).

Here, it is undisputed that "there is no express choice of law clause in the Policy." Dkt. 67 at 16. Nevertheless, PALIC argues that either the law of Missouri or Kansas should apply because the Policy's "Conformity with State Statutes"[3] and "Time and Payment"[4] provisions make "clear the parties contractually intended Missouri/Kansas law to apply because that is the State where Plaintiff resides."[5] *Id.* "Neither the Texas Supreme Court nor the Fifth Circuit have addressed whether these provisions are valid choice of law provisions." *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 549 (W.D. Tex. 2020) (examining similar provisions). PALIC "cites to scant authority suggesting that form contracts have choice of law clauses subjecting the interpretation of the entirety of the contract to 50 different sets of laws," while "most courts to consider similar provisions have found that they are not choice of law clauses." *Id.* (collecting cases). I concur with Chief Judge Garcia's extensive analysis of this issue in *Spegele* and also find that where such clauses do "not specify a single state and can be naturally read as a conformity with laws provision . . . the Policy does not call for the application of the insured's state's law." *Id.* at 550.

Because there is no enforceable choice of law provision in the Policy, I must apply the "most significant relationship" test articulated in the Restatement. This test requires me to consider: (1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) "the domicil, residence, nationality, place of incorporation and place of business of the parties"; and (4) "where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971). PALIC does not address the Restatement or the

---

[3] This provision states: "Any provision of the policy which, on [its] Effective Date, is in conflict with the statutes of the state in which You reside is hereby amended to conform to the minimum requirements of such statutes." Dkt. 67-1 at 16.

[4] This provision states, in relevant part: "We will also pay interest on the amount payable at the rate of interest and period of time required by applicable State law." Dkt. 67-1 at 15.

[5] To be clear, Drees resides in Kansas, not Missouri. She has lived in Kansas since 1989. *See* Dkt. 67-3 at 26–27. For whatever reason, the Policy was delivered to Drees at her mother's Missouri address. *See id.* at 100–101.

"most significant relationship" test. Instead, PALIC asserts—without citation to any case law—that because "Texas law defers to the law of another state or country for policies delivered outside of Texas," and because "Missouri law does not permit a private cause of action for the types of violations upon which Plaintiff relies," Drees's claims should fail as a matter of law. Dkt. 67 at 17 (citing TEX. INS. CODE § 1201.205; MO. REV. STAT. § 375.938).[6] Curiously, this argument requires me to look to Texas substantive law—the Texas Insurance Code—to reach PALIC's desired outcome.

That PALIC would have me look to the Texas Insurance Code to resolve this dispute, coupled with PALIC's failure to address the relevant choice of law rules (or to address choice of law at all in its reply brief), is telling. Suffice it to say, the majority of the § 145 factors point to Texas, as Drees notes in her response:

> Under this analysis, Plaintiff's claims are most significantly related to Texas. PALIC is organized and headquartered in Texas. The crux of the conduct causing the injury occurred in Texas. The Policy was designed, developed, and drafted in Texas. PALIC directed the solicitation of, collection of information from, and approval and acceptance of Plaintiff from its Texas home office. PALIC billed and collected premiums from its home office. Plaintiff's claim for benefits under the Policy was received, processed, and acted upon in Texas. PALIC evaluated Plaintiff's appeal and prepared its denial in Texas. The relationship between Plaintiff and PALIC was centered in Texas, and so Texas law, and the Tex. Ins. Code, apply to PALIC's claims.

Dkt. 76 at 16–17. All in all, I need not belabor the choice of law analysis, though, because Drees's claims fail even under Texas law.

B.  **Drees's Claims Against PALIC Fail As a Matter of Texas Law**

As I analyze Drees's claims, I am mindful of the following background principles articulated by the Fifth Circuit:

---

[6] PALIC also asserts that "Missouri and Kansas do not recognize any statutory or common-law bad faith claim by an insured against an insurer in a policy dispute like this." *Id*. But this is not a bad faith action. If it were, Drees would have brought suit pursuant to Texas Insurance Code § 541.060, not § 541.061.

> Under Texas law, the interpretation of insurance contracts is governed by the same rules that apply to contracts generally. The terms used in an insurance policy are to be given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense. The contract is to be considered as a whole, with each part given effect and meaning.
>
> When considering the propriety of a grant of summary judgment in a case involving the construction of an insurance policy, [I] must determine whether the applicable terms of the policy are ambiguous. . . . When the terms of an insurance policy are clear and unambiguous a court may not vary those terms.

*Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 99 F.3d 695, 700 (5th Cir. 1996) (citations and quotations omitted). These rules apply with equal force when interpreting an insurance contract in the context of a tort claim for misrepresentation. *See Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 791 (Tex. App.—Dallas 2011, no pet.). Moreover, "Texas law is clear that the policy's language controls and the insured has a duty to read and be familiar with the terms of his own insurance policy." *Id.* at 792. Drees is bound to the Policy's terms and "charged with knowledge of its conditions and coverage." *Id.*

Here, I find that the Policy's plain language—which the parties agree is unambiguous—when read in context, giving effect to each contractual provision, does not provide coverage for surgical supplies under the Daily Surgery Indemnity Benefit, and it would be unreasonable to think otherwise. Neither the Schedule of Benefits nor Section 3, the Benefit Provisions section, even mention the word "supplies" or "supply" at all. That these are the relevant sections for determining what is included in the Policy is reinforced by Section 4, the Exclusions and Limitations section, which explicitly states that "no benefits will be payable as the result of: (a) any service, supplies or treatment that is not a specified benefit described in Section 3 hereof." Dkt. 67-1 at 12. Section 3 does not specify or describe surgical supplies as part of the Daily Surgery Indemnity Benefit.

Nevertheless, Drees argues that PALIC's "referencing supplies as a covered benefit and using supplies in the definition of medically necessary was a material

8

misstatement and misled policyholders." Dkt. 76 at 23. But this argument ignores the full definition of "Covered Benefits," and the context in which the "Covered Benefits" and "Medically Necessary" definitions appear in the Policy. "Covered Benefits" are "[t]hose services and/or supplies *if included in this policy* . . . ." Dkt. 67-1 at 6 (emphasis added). No reasonable person could believe the "Covered Benefits" definition establishes coverage of supplies—or anything, for that matter—when the definition explicitly contemplates, through the use of the words "if included," that some services and supplies are not included. Nor could an insured reading the Policy, in its entirety, reasonably believe that the mere appearance of the word "supplies" in the "Medically Necessary" definition constitutes coverage of surgical supplies as part of the Daily Surgery Indemnity Benefit. Section 4, the Exclusions and Limitations section, expressly states that "no benefits will be payable as the result of: (a) any . . . supplies . . . that is not a specified benefit described in Section 3." *Id.* at 12. As note, the word "supplies" does not appear anywhere in Section 3.

That the Exclusions and Limitations section is fatal to Drees's claims is reinforced by *Kimberly-Clark Corp. v. Factory Mutual Insurance Co.*, No. 3:05-cv-2097, 2007 WL 9712214 (N.D. Tex. Sept. 21, 2007). Drees's counsel cited *Kimberly-Clark* after I asked at oral argument for an example of a court finding that the terms of an unambiguous insurance policy itself violated § 541.061. Kimberly-Clark argued, in relevant part,

> that Factory Mutual's failure to disclose to Plaintiff (1) that Defendant may impose prospective conditions for eligibility to receive a portion of the company's surplus when a distribution is declared, and (2) that failure to satisfy such conditions could result in a complete forfeiture of vested rights as of the record date, constitutes a violation of § 541.061(2) of the Texas Insurance Code.

*Id.* at *9 (quotation omitted). The district court agreed, finding that

> the governing documents lack any provision limiting a policyholder's right to participate in a distribution except for the termination provision. ***This absence of explicit limitations other than the termination provision***, combined with the generally accepted

9

> principles that (1) a primary purpose of a mutual insurance company is to provide insurance to its policyholders at cost, and (2) the surplus of a mutual company belongs equitably to the policyholders who contributed to it, would have misled a reasonably prudent policyholder to believe that it was entitled to share in any distribution . . . so long as it was a member of the company on the record date.

*Id.* (emphasis added). Unlike *Kimberly-Clark* though, the policy at issue here does provide an explicit limitation. Section 4(a), the Exclusions and Limitations section, expressly states that there is no coverage for "any service, supplies or treatment that is not a specified benefit describe in Section 3." Dkt. 67-1 at 12. Section 4(w) also excludes "any service, supplies or treatment that is not Medically Necessary." *Id.* The combination of Sections 4(a) and (w) should put a reasonable insured on notice that even medically necessary services, supplies, or treatments are not covered if they are not listed in Section 3. Again, "supplies" is not described, listed, or otherwise mentioned in Section 3. Therefore, it is unreasonable to think that supplies are covered.

To the extent Drees argues that PALIC failed to state a material fact by not disclosing that the Policy would never provide any benefit for medically necessary surgical supplies, such an argument has already been rejected by Texas courts. In *Howard*, the court rejected the plaintiff's argument that the insurer failed to state a material fact by not expressly excluding his equipment and personal property. 347 S.W.3d at 793–94. "Absence of an exclusion does not confer coverage." *Id.* at 793. Surgical supplies were not specifically excluded from the Policy "because they would not otherwise be included." *Id.* An insured's "assumptions about coverage" do not create a fact issue when the policy unambiguously does not provide the coverage that the insured believed it should. *Id.* at 789.

Drees tries a different tack, arguing that "the Policy deceived policyholders with regard to their Surgical Indemnity Benefit by representing falsely that RBRVS was *the* methodology the federal government employs under Medicare for payment of services *and* supplies when Medicare uses the DRG payment system

for this purpose." Dkt. 76 at 24. Drees contends that an "insured would reasonably believe that if [RBRVS] were, in fact, the methodology used by Medicare, it would include a value for the provision of both medical services and supplies that the Policy unambiguously states are covered." *Id.* at 20–21. But it is irrelevant whether RBRVS is *the* methodology or merely *a* methodology used by Medicare because the Policy defines RBRVS.

"When an insurance policy defines its terms, those definitions control." *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 381 (Tex. 2012). The Policy's RBRVS definition states that the "Relative Value Unit" or "RVU" is "the sum of three component RVUs including the Work RVU, the Practice Expense RVU and the Malpractice RVU." Dkt. 67-1 at 8. It goes on to state that the "Work RVU takes into account factors such as the amount of time required to perform the service and the degree of skill required to perform it." *Id.* It is unreasonable to think tangible goods like surgical supplies are calculated with reference to "time" or "skill." Nor is it reasonable to think the Practice Expense RVU, which "takes into account the location of the service," has anything to do with surgical supplies. *Id.* Similarly, it would be unreasonable to think the Malpractice RVU, which "takes into account the malpractice cost associated with a particular practice" has anything to do with surgical supplies. *Id.* In short, there is absolutely nothing about the RBRVS definition that would make a reasonable insured think it encompasses surgical supplies. To the extent Drees nevertheless believed that RBRVS included a valuation for surgical supplies simply because the definition said that RBRVS was "the methodology used by the federal government," such a belief is unreasonable in the face of the plain language of the entire definition and the Policy as a whole.

Because I find any belief that the Policy included coverage for surgical supplies as part of the Daily Surgery Indemnity Benefit to be unreasonable, I do not reach the parties' extensive discussion of *USAA Texas Lloyds Company v. Menchaca*, and whether Drees can recover damages for a statutory violation of the Texas Insurance Code without establishing "a right to receive benefits under the

11

policy or an injury independent of a right to benefits." 545 S.W.3d 479, 500 (Tex. 2018). Assuming Drees is correct that *Menchaca* "actually supports Plaintiff's position," such an argument still requires a reasonable belief, which is not present in this case. *See, e.g.*, *id.* at 497 ("Although the policy does not give the insured a contractual right to receive the benefits, the insurer's misrepresentation of the policy's coverage constitutes a statutory violation that causes actual damages in the amount of the benefits that the insured ***reasonably believed*** she was entitled to receive." (emphasis added)).

* * *

For all these reasons, I find that Drees's statutory misrepresentation claims under § 541.061 of the Texas Insurance Code fail as a matter of law.[7]

## C. Drees's Request for Declaratory Judgment Fails with Her Statutory Claims

In her response, Drees does not dispute that her request for declaratory judgment is inextricably tied to her statutory claims. Because Drees's statutory claims fail as a matter of law, her request for declaratory judgment also fails.

## D. The Remaining Motions Are Moot

Because I recommend that summary judgment be granted in PALIC's favor, Drees's motion for class certification is moot. *See Rocky v. King*, 900 F.2d 864, 869 (5th Cir. 1990) ("This Court generally has concurred with the proposition that a purported class action is moot where the named plaintiff's individual claim became moot before class certification."). PALIC's motion to exclude expert testimony is similarly moot.

## CONCLUSION

For the reasons stated above, I recommend that PALIC's Motion for Summary Judgment (*see* Dkt. 67) be **GRANTED**, and that Drees's Motion for

---

[7] Because I find that Drees's claims fail as a matter of law, I do not reach PALIC's limitations arguments.

Class Certification (*see* Dkt. 88) and PALIC's Motion to Exclude the Expert Testimony of Mark Billingsley (*see* Dkt. 92) be **DENIED** as moot.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 3rd day of January 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE